UNITED STATES DISTRICT COURT
DISTRICT OF WASHINGTON, D.C.

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. ARMY CORPS ENGINEERS;<br>MICHAEL CONNOR, in his capacity as Assistant Secretary;<br>COL. ROBERT J. NEWBAUER, in his Capacity as Omaha District Commander; and<br>BRIG. GEN. GEOFF VAN EPPS, in his capacity as Northwestern Division Commander,<br><br>    Defendants. | Case No. 1:24-cv-02905 |

**DECLARATION OF JULIE FEDORCHAK
IN SUPPORT OF MOTION TO INTERVENE**

I, Julie Fedorchak, state and declare as follows:

    1.    My name is Julie Fedorchak. I am over 21 years of age and am fully competent and duly authorized to make this Declaration. The facts contained in this Declaration are based on my personal knowledge and are true and correct.

    2.    I am familiar with the Complaint in this matter filed by the Standing Rock Sioux Tribe against the U.S. Army Corps of Engineers (Corps) in Case No. 1:24-cv-02905 (D.D.C), which seeks an immediate and permanent injunction against the continued operation of the Dakota Access Pipeline (DAPL) at the crossing of the Missouri River at Lake Oahe, which would effectively end the operation of DAPL, and transportation of crude oil through DAPL, in North Dakota.

    3.    I am a commissioner serving on the North Dakota Public Service Commission (the "Commission"), and served as chair of the Commission during the siting of the Dakota Access

1

Pipeline ("DAPL") project. In that capacity, I am familiar with the Commission's role in the extensive environmental and regulatory review of DAPL on behalf of the Commission and my duties therein.

4.  The Commission is a constitutional agency statutorily charged with the siting of transmission facilities under the North Dakota Siting Act, which is codified in Chapter 49-22 and 49-22.1 of the North Dakota Century Code. The purpose of the Siting Act is to ensure that the location, construction, and operation of transmission facilities will produce minimal adverse effects on the environment and upon the welfare of the citizens of this state by providing that no transmission facility shall be located, constructed, and operated within this state without a certificate of site compatibility or a route permit issued by the Commission. Projects such as DAPL fall under the jurisdiction of the Commission's statutory duties regarding the siting of transmission facilities.

5.  In my capacity as Commissioner, my responsibilities include utility rate regulation; utility resource adequacy; regional transmission organization engagement; energy generation, refinement, and transmission infrastructure siting; railroad safety oversite; gas pipeline safety on behalf of the Pipeline and Hazardous Materials Safety Administration ("PHMSA"); coal mine permitting and reclamation; restoration of abandoned mine lands; and various other compliance programs. While all Commissioners exercise equal authority and share equal responsibility for every decision, my portfolio assignments include, among other things, overseeing the permitting processes of transmission pipelines. More specifically, I was the Commission portfolio holder for pipeline siting during the permitting of the Dakota Access Pipeline.

6.  I attest that the Commission exercised its statutory and regulatory authority in reviewing and certifying DAPL in accordance with the North Dakota Constitution and statutes that

establish the public purposes and duties of the Commission on behalf of the citizens of North Dakota. From the initial filing of the application through the Commission's issuance of its second supplemental order, the siting procedure extended 18 months and the Commission has had continuing jurisdiction over the construction process (including any post-construction restoration or remediation) for more than 9 years.

7. On December 22, 2014, Dakota Access, LLC filed applications with the Commission requesting a certificate of corridor compatibility and a route permit concerning approximately 358 miles of 12-, 20-, 24-, and 30-inch diameter crude oil pipeline and associated facilities within the State for the project ultimately known as the Dakota Access Pipeline or DAPL. The Dakota Access Pipeline would carry half a million barrels of North Dakota oil daily through the Dakotas and Iowa to a distribution point in Illinois. The proposed (and ultimately Commission approved) route avoided the Standing Rock Sioux Tribe's reservation and crossed under Lake Oahe, a Missouri River reservoir in North Dakota. On March 25, 2015, the Commission deemed Dakota Access' applications for a certificate of corridor compatibility and a route permit complete, conditioned upon receiving additional environmental reports including a wetlands and waterbody field survey report, the wildlife field survey report, the habitat assessment field survey report, and the tree and shrub inventory report.

8. Also, on March 25, 2015, the Commission issued a Notice of Filings and Notice of Hearings, scheduling hearings regarding the applications for a certificate of corridor compatibility and route permit for May 28, 2015; June 15, 2015; and June 26, 2015.

9. The Notice identified three issues be considered: (1) Will the location, construction, and operation of the proposed facilities produce minimal adverse effects on the environment and upon the welfare of the citizens of North Dakota?; (2) Are the proposed facilities compatible with

the environmental preservation and the efficient use of resources?; and (3) Will the proposed facility locations minimize adverse human and environmental impact while ensuring continuing system reliability and integrity and ensuring that energy needs are met and fulfilled in an orderly and timely fashion?

10. The three public hearings on Dakota Access' applications for certificate of corridor compatibility and route permit were held as scheduled. Hundreds of interested persons participated. Everyone who wished to testify was allowed to do so with no time restrictions. More than 30 hours of testimony were received during the public hearings.

11. The Commission heard and evaluated expert and citizen testimony regarding the environmental, health, recreation, soil, water resources, wildlife, and cultural and historic preservation consequences of DAPL. The Commission evaluated the Lake Oahe crossing under the Missouri River, as well as other possible alternative routes through the state. Among the alternatives, the Commission considered the use of third-party infrastructure, other forms of transporting oil, and alternative routes of operation. DAPL's approved route was based upon the opportunity to locate with proximity to existing infrastructure, minimize safety concerns, avoid environmentally sensitive areas, avoid indigenous and federally owned lands, and other high-consequence areas as defined by the PHMSA and State law, to minimize disruptive construction, and enhance efficient operation.

12. With respect to the chosen Lake Oahe crossing, the Commission heavily evaluated the route and considered its location relative to existing utility lines and pipelines. Paralleling DAPL with existing utility lines and pipelines throughout the route including in an existing crossing under the Missouri River minimized the amount of ground and area that would be newly disturbed, thereby reducing the risk of disturbing sites of historic and cultural significance or

causing adverse environmental impacts. Other major points of discussion on the crossing were the depth of the crossing 64 feet below the reservoir bottom, the location of automatic block valves, worst-case spill scenarios and emergency response plans including the staging of equipment near the river crossing, and the Army Corps of Engineers' (Corps') evaluation of the preferred southern route.

13.     In addition to the Commission's evaluation, the Corps' evaluation corroborated the current route as superior.  The Corps' July 2016 Environmental Assessment evaluated an alternative crossing north of Bismarck against DAPL's current route crossing at Lake Oahe.  The results revealed the current DAPL route to be preferred in nearly every aspect.  The current route and crossing would result in a 10.6 % reduction in mileage, a 38 % increase in corridor collocation with other infrastructure, and cumulatively less impact in nearly every other of the assessed factors, including waterbodies, floodplains, agriculture, and transportation crossings.

14.     Spill prevention control and countermeasures were provided to the Commission. The company's Environmental Mitigation Plan contained DAPL's Spill Prevention, Containment, and Countermeasures to minimize the environmental impact associated with spills or releases during the construction of the project.  Scenarios, preventative measures, and cleanup in the event of a spill were evaluated and reviewed by the Commission in granting the site certificate.

15.     The Commission reviewed DAPL's class I and III cultural resources study and survey and solicited input from the North Dakota State Historic Preservation Office (NDSHPO). In reviewing the project, 509 cultural resource sites were identified during the Class III survey on the areas and DAPL agreed to work with NDSHPO to avoid and mitigate impacts to cultural resources.  The initial siting received a NDSHPO concurrence letter of "No Significant Sites Affected" and notification that DAPL's mitigation plan for cultural resources was acceptable. In

approving the projects, the Commission ordered DAPL to file all cultural resource mitigation plans to NDSHPO for approval prior to the start of any fieldwork and construction activity in the area. The Commission also ordered that if any cultural resource, paleontological site, archeological site, historical site, or grave site is discovered during construction, it must be marked, preserved, and protected from further disturbances until professional examination can be made and a report of such examination is filed with the Commission and NDSHPO and clearance to proceed is given by the Commission.

16.  On January 20, 2016, having allowed all interested persons an opportunity to be heard and having heard, reviewed, and considered all testimony and evidence presented during the State's extensive siting evaluation, the Commission issued its order granting Dakota Access its Certificate of Corridor Compatibility and Route Permit ("Certificate Order") pursuant to the North Dakota Century Code Chapter 49-22. Based upon the evidence and comments provided from numerous State and Federal agencies, intervening parties, and the interested public, the Commission determined that the location, construction, and operation of DAPL would best minimize adverse human and environmental impacts. Commission's Finding of Fact Number 17 in the Certificate Order states that the Corps was specifically notified about the project and given the opportunity to confer with the State and the Commission on the justifications for the pipeline.

17.  In addition to the initial published notices and Certificate Order, the Commission published additional notice of opportunities for hearing regarding requested corridor and route adjustments on September 16, 2015, and April 20, 2016, and issued a supplemental order on May 24, 2016. The Commission did not receive a request for reconsideration or rehearing of the Certificate Order or subsequent orders.

18.  During construction, the Commission and NDSHPO were notified of an

unanticipated discovery possibly involving human remains. Once notified, ND Intertribal Reinterment Committee members, including Tim Mentz, Sr. (Standing Rock) met with NDSHPO for an on-site inspection. Based on the inspection, negative findings of human remains were reported. The Commission's construction inspectors and DAPL also reported a number of other cultural resource discoveries and the steps taken by DAPL and project archeologists to protect the resource and reroute the project when necessary. These unanticipated discoveries were and continue to be subject to the Commission's jurisdiction and enforcement.

19. On June 20, 2019, Dakota Access, LLC filed an application to optimize and upgrade DAPL ("Optimization") by installing a new pump station in Emmons County to meet a need for additional transportation capacity. The Optimization added a new pump station to allow transportation of up to 1,100,000 total barrels per day.

20. On July 10, 2019, the Commission deemed the application complete and issued a Notice of Opportunity for Hearing. The Commission again considered the issues: (1) Will the location, construction, and operation of the proposed facilities produce minimal adverse effects on the environment and upon the welfare of the citizens of North Dakota?; (2) Are the proposed facilities compatible with the environmental preservation and the efficient use of resources?; and (3) Will the proposed facility locations minimize adverse human and environmental impact while ensuring continuing system reliability and integrity and ensuring that energy needs are met and fulfilled in an orderly and timely fashion?

21. On July 30, 2019, the Standing Rock Sioux Tribe requested the Commission hold a hearing on the Optimization. The Commission responded on August 21, 2019, by issuing a Notice of Hearing for the issues to be heard. Following the issuance of the Notice of Hearing, the Standing Rock Sioux Tribe formally intervened in the proceeding.

22. On November 13, 2019, the Commission held a hearing on the Optimization. The hearing lasted over 13 hours with testimony and public comment. Much of the hearing discussed measures to mitigate impacts, leak detection, safety, emergency response training, and response plans that would be implemented by DAPL to ensure that the operations meet or exceed industry standards or requirements set forth by PHMSA.

23. The Commission again reviewed the company's plan during the Optimization proceeding and found that with the preparation and filing of a facility response plan with the PHMSA, environmental monitoring of the construction activities, and the adequate response personnel and equipment to respond, DAPL would continue to minimize adverse human and environmental impacts. The Commission also reviewed impacts on cultural resources and received a letter from the NDSHPO providing that they concurred with no significant effect on archeological or architectural sites.

24. On February 19, 2020, having allowed all interested persons an opportunity to be heard and having heard, reviewed, and considered all testimony and evidence presented during the State's additional siting evaluation, the Commission issued its Third Amended Certificate of Corridor Compatibility and Third Amended Route Permit approving the construction, operation, and maintenance of the pump station. Based upon the evidence and comments provided by numerous agencies, intervening parties, and the interested public, the Commission determined that there would be minimal adverse effects from the location, construction, and operation with the Optimization. Again, the Army Corps of Engineers was specifically notified about the project and allowed to confer with the State and the Commission on the Optimization of DAPL.

25. Cumulatively, the Commission held four public hearings with an opportunity for full participation by intervenors, state and federal agencies, and the public. The Commission

provided multiple additional opportunities for public hearings which received no requests to be heard. The Commission did not receive a request for reconsideration or rehearing from the issuance of any orders related to DAPL. Pursuant to the State's Administrative Practices Act, the Commission's Certificates and subsequent orders were subject to judicial review, if among other things, they were issued not in accordance with the law, did not afford a fair hearing, were not supported by the evidence, and did not sufficiently address the evidence presented by a party. No party, intervenor, or affected person challenged a Commission order granting a certificate or permit in any of the Commission proceedings.

26. DAPL is subject to the continuing jurisdiction of the Commission and has operated for over 9 years without notification or filing regarding an incident or spill within the state of North Dakota.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 5, 2024.

*Julie Fedorchak*

JULIE FEDORCHAK

Commissioner,
North Dakota Public
Service Commission