**UNITED STATES DISTRICT COURT**
**DISTRICT OF WASHINGTON, D.C.**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. ARMY CORPS ENGINEERS;<br>MICHAEL CONNOR, in his capacity as Assistant Secretary;<br>COL. ROBERT J. NEWBAUER, in his Capacity as Omaha District Commander; and<br>BRIG. GEN. GEOFF VAN EPPS, in his capacity as Northwestern Division Commander,<br><br>    Defendants. | Case No. 1:24-cv-02905 |

**DECLARATION OF NATHAN D. ANDERSON**
**IN SUPPORT OF MOTION TO INTERVENE**

I, Nathan Anderson, state and declare as follows:

1. My name is Nathan D. Anderson. I am over 21 years of age and am fully competent and duly authorized to make this Declaration. The facts contained in this Declaration are based on my personal knowledge and are true and correct.

2. I am the Director of the North Dakota Industrial Commission (NDIC) Department of Mineral Resources (DMR). The mission of the DMR is to encourage and promote the development, production, and utilization of oil and gas in North Dakota in such a manner as will prevent waste, maximize economic recovery, and fully protect the correlative rights of all owners to the end that the landowners, the royalty owners, the producers, and the general public realize the greatest possible good from these vital natural resources without resulting in the loss of North Dakota's vast and valuable landscape.

3.      I am familiar with the Complaint in this matter filed by the Standing Rock Sioux Tribe against the U.S. Army Corps of Engineers (Corps) in Case No. 1:24-cv-02905 (D.D.C), which seeks an immediate and permanent injunction against the continued operation of the Dakota Access Pipeline (DAPL) at the crossing of the Missouri River at Lake Oahe, which would effectively end the operation of DAPL, and transportation of crude oil through DAPL, in North Dakota. This declaration describes the importance of the oil industry to North Dakota's economy and citizens, and the significant adverse impacts on North Dakota if the DAPL is shut down or its use otherwise is curtailed.

4.      Recent data proves shutting down DAPL at a time when crude oil production and pricing have been stable for the past couple years would negatively affect North Dakotan's as well as upset the balance of production across the United States. The industry continues to drill, complete and produce longer and longer horizontal laterals, some as long as 4 miles in lateral length, and improve hydraulic fracturing techniques which is driving efficiency resulting in less rigs, hydraulic fracturing equipment and surface impacts while improving production rates and recoveries in areas of lower geologic quality that are equal to or better than historical rates and recoveries in the best Bakken and Three Forks geology. These efficiencies have allowed the industry to test and develop areas of the Bakken Formation that otherwise would not have been developed. North Dakota is the nation's third-largest oil producing state, currently producing ~1.2 million barrels per day.

5.      Recent data from the U.S. Energy Information Administration ("EIA") forecasts that crude oil production in the lower 48 United States will increase through 2025, including in the

Bakken region in North Dakota.[1] As a result, the EIA forecasts in the following increases in crude oil production.[2]





---

[1] U.S. Energy Information Administration, *Short-Term Energy Outlook*, pages 6-8 (Oct., 2024) (available at https://www.eia.gov/outlooks/steo/pdf/steo_full.pdf) (Last visited Nov. 6, 2024).
[2] *Id.* at 7-8.

3

6.      Data from the EIA also indicates that U.S. private storage and Strategic Petroleum Reserve (SPR) crude oil stocks are at or near 5-year and 40-year low levels respectively.[3] DAPL constitutes the only pipeline link between North Dakota production and these critical national security destinations.

**Crude oil stocks *(million barrels)* and days of supply**



---

[3] U.S. Energy Information Administration, *Crude oil stocks (millions barrels) and days of supply* (available at: https://www.eia.gov/petroleum/weekly/crude.php (last visited Nov. 6, 2024)); U.S. Energy Information Administration, *Weekly U.S. Ending Stocks of Crude Oil in SPR* (available at: https://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=WCSSTUS1&f=W (last visited Nov. 6, 2024)).

4



7.      In addition, data from the EIA indicates that U.S. crude oil exports to our allies are at record levels and are increasing.[4] Based on recent North Dakota production data, DAPL currently flows ~600,000 barrels of oil per day (BOPD) of the 1,200,000 BOPD that North Dakota currently produces. Roughly 50% of ND crude flows on DAPL and illustrates that DAPL serves as the primary cost-effective transportation method to get North Dakota crude oil to markets that did not exist before DAPL. These markets will be permanently lost to North Dakota oil and gas producers in the event DAPL is shut down.

---

[4] U.S. Energy Information Administration, *Annual U.S. crude oil exports (1920-2023)* (available at:https://www.eia.gov/todayinenergy/detail.php?id=61584#:~:text=U.S.%20crude%20oil%20exports%20established,annual%20record%20set%20in%202022 (last visited Nov. 6, 2024)).



8. At this time, North Dakota's crude oil production is consistent with global trends because it is transported to coastal markets where it competes with other domestic and international crude oil. Currently this allows the best opportunity for North Dakota operators to receive the best pricing for North Dakota crude and compete for capital investment with other United States on-shore basins.

9. A substantial portion of the oil produced in North Dakota and oil and gas activity is from development on Fort Berthold Indian Reservation (FBIR) and generates tax and royalty revenue for the Mandan Hidatsa Arikara (MHA) tribe and royalty revenue for individual tribal members as follows (based on August 2024 DMR data):

- Daily production of 196,207 barrels of oil (123,726 trust and 72,481 fee);
- 1 active drilling rig (1 trust and 0 fee);
- 2,951 active oil and gas wells (2,249 trust and 702 fee);
- 120 approved drilling permits (117 on trust lands and 3 on fee lands);
- Estimated 3,500 potential future wells (2,500 on trust lands and 1,000 on fee lands);

10. The State also expects that North Dakota crude oil production will continue to

increase in the coming years with DAPL transporting approximately 50 percent of Bakken production volumes. Crude oil pipelines like DAPL are more efficient, pose less risk, safer and are more environmentally friendly than other oil transportation methods such as rail and truck transportation. Based on a conversation between Energy Transfer and the DMR, the DMR, estimates that 75-90% of this crude oil transportation is subject to binding contracts so it must be produced and transported in accordance with those commitments or be shut in, meaning 550,000 to 600,000 barrels of oil per day will likely remain shut-in until economically viable alternate transportation can be secured. This would result in an estimated temporary loss of 8,450 to 9,300 full time jobs and a permanent loss of 1,700 to 2,200 full time jobs. The estimated time frame to begin securing alternate transportation is three months, and to secure economic alternative transportation of the entire shut-in volume is 12 months. If DAPL is shuttered, North Dakota oil producers will have to shift to less efficient rail and truck shipping, methods that come with increased spill and safety risks, and are less environmentally friendly, emitting about twice the amount of air pollution. Moreover, if 50% of North Dakota's oil production must be transported by rail and truck, North Dakota's railways and roadways through our communities and rural areas will be subject to significant additional congestion and increased costs of maintenance for repairs and upgrades. A DAPL shutdown would also increase transportation costs for producers, as alternative rail transportation and truck transportation freight rates peak due to substantially increased demand.

11. North Dakota oil and gas operators have stated they plan for stable or slightly increased drilling and completion activities through 2037 based in part upon the reasonable assumption of the continued operation of DAPL capacity. Operators currently operate 39 drilling rigs that generate approximately 6,400 full time jobs. In previous years when pipelines were full

7

and crude oil had to be shipped by rail, operators reduced drilling activity approximately 15% and when DAPL started up they increased drilling activity 20%. Shutting down DAPL is expected to result in the loss of at least four to five drilling rigs and the associated loss of 600-750 full-time jobs. In addition, loss of those drilling rigs will result in seven to nine fewer new wells drilled per month, including associated tax revenues and the associated loss of 9-12 new full-time jobs per month. The job loss estimates were derived from a 2023 study done by the North Dakota Petroleum Council, North Dakota State University Department of Agribusiness and Applied Economics, and the Vision West project. This study looked at the average number of jobs per drilling rig and producing well in North Dakota. Shutting down DAPL would also cause extensive disruption in the long-term drilling, completion, production, and transportation sectors resulting in permanent job losses. Using the same study noted above, this would mean the permanent loss of 2,000 to 3,000 full-time jobs.

12. Based on past trends in the Williston Basin a shutdown of DAPL would increase the basin oil differential resulting in a lower product price received by the producers. Margins are already thin due to current crude oil demand, and producers would have to absorb additional transportation costs resulting from more expensive transportation methods, thus reducing the economic viability of Bakken crude. Typically, operators compete against other basins for capital allocation and any reduction to product pricing of North Dakota crude oil will drive capital investment out of the state.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2024.

_____
NATHAN D. ANDERSON