IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STANDING ROCK SIOUX TRIBE**, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | |
| **U.S. ARMY CORPS OF ENGINEERS; MICHAEL L. CONNOR; ROBERT NEWBAUER; GEOFF VAN EPPS**, | § § § § § | |
| *Defendants*, | § § | Case No. 1:24-cv-02905-JEB |
| **STATE OF NORTH DAKOTA**, et al., | § § § | |
| *Defendant-Intervenors*, | § § | |
| **DAKOTA ACCESS, LLC,**<br>8111 Westchester Drive, Suite 600,<br>Dallas, Texas 75225, | § § § § | |
| *Proposed Defendant-Intervenor.* | § | |

**STATEMENT OF POINTS AND AUTHORITIES IN
SUPPORT OF DAKOTA ACCESS, LLC'S UNOPPOSED MOTION FOR
LEAVE TO INTERVENE IN SUPPORT OF DEFENDANTS**

William S. Scherman (D.C. Bar No. 384860)
Ronald J. Tenpas (D.C. Bar No. 981074)
Jason J. Fleischer (D.C. Bar No. 978810)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6588
Facsimile: (202) 639-6604
Email: wscherman@velaw.com
Email: rtenpas@velaw.com
Email: jfleischer@velaw.com

*Counsel for Dakota Access, LLC*

## **TABLE OF CONTENTS**

Page

Introduction .................................................................................................................................... 1

Factual Background ....................................................................................................................... 2

Argument ........................................................................................................................................ 4

    I.    Dakota Access Is Entitled to Intervene as of Right. .............................................................. 4

        A.    This Motion is Timely. ................................................................................... 6

        B.    Dakota Access Has Legally Protected Interests at Stake. ............................. 7

        C.    The Disposition of This Case Will Affect the Ability of Dakota Access to Protect its Interests. ................................................................................... 8

        D.    The Existing Defendants Do Not Adequately Represent Dakota Access's Interests. ....................................................................................... 8

    II.    Alternatively, Dakota Access Should Be Granted Permissive Intervention Under Rule 24(b)(1)(B). ................................................................................................ 11

Conclusion ................................................................................................................................... 12

Certificate of Compliance ............................................................................................................ 13

Certificate of Service ................................................................................................................... 13

**INTRODUCTION**

Dakota Access, LLC ("Dakota Access") respectfully submits this memorandum in support of its Unopposed Motion for Leave to Intervene ("Motion"). Before filing this Motion, counsel for Dakota Access contacted counsel for Plaintiff, the federal Defendants, and the existing Defendant-Intervenors. No party opposes the relief requested in this Motion.[1]

Plaintiff Standing Rock Sioux Tribe ("SRST" or "Tribe") alleges in its Complaint that the U.S. Army Corps of Engineers ("Corps") has violated a variety of federal statutes and treaties by allowing Dakota Access to operate the Dakota Access Pipeline ("DAPL"). Among other requests, SRST seeks to immediately enjoin the Corps from allowing Dakota Access to operate DAPL. Many of Plaintiff's arguments closely resemble claims that SRST pursued in a prior lawsuit filed in this Court in 2016, in which Dakota Access was permitted to intervene as of right. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-cv-1534 (the "Prior Lawsuit").

As the owner of DAPL, Dakota Access has a direct stake in this litigation and would be significantly harmed if the relief requested by SRST were to be granted by this Court. Dakota Access is entitled to intervene in this lawsuit as of right because: (1) this Motion is timely; (2) Dakota Access has legally protectible interests in this litigation; (3) the disposition of this case could impair Dakota Access's interests, including its ability to continue operating DAPL; and (4) the existing defendants do not and cannot adequately represent Dakota Access's interests. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Alternatively, permissive intervention is proper under Federal Rule of Civil Procedure 24(b).

---

[1] Counsel for Plaintiff informed Dakota Access that Plaintiff takes no position on Dakota Access's Motion. Counsel for the federal Defendants informed Dakota Access that the government intends to file a response indicating non-opposition. Counsel for the State of North Dakota indicated that North Dakota does not oppose this Motion. Counsel for the State of Iowa informed Dakota Access that the remaining Intervenor-Defendants also do not oppose this Motion.

1

**FACTUAL BACKGROUND**

As this Court is aware, Dakota Access owns and receives direct economic benefits from DAPL, which is a 1,172-mile pipeline that delivers oil from the Bakken oil fields in North Dakota to Illinois. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 114 (D.D.C. 2017) ("*Standing Rock III*"). Since it commenced operations on June 1, 2017, DAPL has safely transported more than 1.4 billion barrels of oil and has provided the largest and most efficient outlet for crude oil from the Bakken region to the U.S. crude market. *See* Supplemental Decl. of Glenn Emery ¶¶ 5, 9, Prior Lawsuit D.E. 596-2 (Apr. 22, 2021) ("Emery Decl.").[2] DAPL is one of the safest pipelines in the world and has operated for more than seven years without a leak or incident on its mainline, including the segment that passes under Lake Oahe.

In addition to generating substantial revenue for Dakota Access and its beneficial owners,[3] DAPL also provides significant direct economic benefits to North Dakota, South Dakota, Iowa, and Illinois in the form of tax revenue. *See* Emery Decl. ¶ 26. Local communities in these States enjoy lower prices for refined products due to DAPL's reliable and economical transportation of crude oil to Gulf Coast refineries, as well as jobs, royalty payments, and service contracts related to the operation of the pipeline. *See id.* ¶¶ 20, 28. DAPL's operations also contribute significant benefits to several Native American tribes in North Dakota. As previously explained to this Court, the Three Affiliated Tribes (the Mandan, Hidatsa, and Arikara Nations) realize millions of dollars

---

[2] Dakota Access filed sealed versions of this declaration, among others, in the Prior Lawsuit. To the extent any information described herein references confidential business or other information filed under seal and/or subject to this Court's prior protective orders, the information remains protected from public disclosure in this litigation. *See* Second Revised Protective Order, Prior Lawsuit D.E. 390 (Dec. 26, 2018). Dakota Access notes that both SRST and the Corps were parties to the Prior Lawsuit and were signatories to the protective order in the Prior Lawsuit.

[3] As explained in the Corporate Disclosure Statement filed with Dakota Access's motion for leave to intervene, Dakota Access is owned by subsidiaries and affiliates of Energy Transfer, LP; Phillips 66 Company; MPLX LP; Exxon Mobil Corporation; and Enbridge Inc.

per year in DAPL-associated tax and royalty revenue, and suffer at least five fewer annual traffic fatalities on their reservation as a result of DAPL-related improvements. *See* Decl. of Mark N. Fox ¶¶ 9-12, Prior Lawsuit D.E. 593-1 (Apr. 19, 2021). This litigation threatens these important benefits and risks imposing significant liabilities on Dakota Access should the Court order the pipeline shut down. *See* Emery Decl. ¶ 12.

This litigation also burdens the Court by rehashing old ground and revisiting issues this Court has already (repeatedly) addressed. In the Prior Lawsuit, SRST sued the Corps under the National Environmental Policy Act ("NEPA"), the Clean Water Act ("CWA"), the Rivers and Harbors Act ("RHA"), and the National Historic Preservation Act ("NHPA"), and it sought injunctive relief against construction and operation of DAPL. *See Standing Rock III*, 255 F. Supp. 3d at 116-17. After Dakota Access successfully intervened on behalf of the Corps, this Court denied two preliminary injunctions, issued two merits opinions following two rounds of summary judgment proceedings, and ultimately allowed Dakota Access to continue operating DAPL while the Corps analyzed the environmental impacts of DAPL. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 540 F. Supp. 3d 45, 64-65 (D.D.C. 2021). At present, the Corps continues to engage in that analysis, in a manner fully compliant with NEPA and this Court's orders. *See Recent Project Update*, US ARMY CORPS OF ENG'RS, http://bit.ly/4dTHSka (last visited Dec. 18, 2024).

Nonetheless, SRST has elected in this lawsuit to effectively re-raise many of the same claims for relief that were already adjudicated in the Prior Lawsuit, including alleged violations of NEPA, the NHPA, and the CWA. *See* Corrected Complaint, D.E. 3-1 ¶¶ 119-152 ("Compl."). SRST again requests that this Court shut down DAPL, despite the ongoing NEPA process and despite the pipeline's demonstrated benefits to several States, local communities, and the broader

U.S. energy market. Meanwhile, SRST and Dakota Access have each provided the Corps with comments on the Corps' draft environmental impact statement, and await the Corps final analysis. Importantly, Dakota Access remains willing to consider other mitigation measures that the Corps or this Court believe would be appropriate.[4] *See* Fifth Decl. of Todd Stamm ¶ 1 n.1, Prior Lawsuit D.E. 585-6 (Jan. 5, 2021).

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure allows parties, upon timely application, to intervene as of right or permissively. For the reasons set forth below, Dakota Access should be allowed to intervene under Rule 24 as of right, or, alternatively, permissively.

**I.     Dakota Access Is Entitled to Intervene as of Right.**

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action,

---

[4] Dakota Access respectfully reminds this Court that SRST has repeatedly refused to participate in spill planning or discussions of mitigation measures that could be implemented at Lake Oahe. From January through March 2018, at the direction of this Court, the Corps and Dakota Access hosted meetings to review and revise spill response plans, but SRST refused to participate in these meetings. *See* Order on Remedy, Prior Lawsuit D.E. 303 (Dec. 4, 2017); Declaration of Carl G. Borkland ¶ 4 ("Borkland Decl."), Prior Lawsuit D.E. 339-2 (Mar. 26, 2019). Despite the Tribe's failure to attend those meetings, the Corps made sure they received the meeting handouts, such as updated Geographic Response Plans. *See* Dakota Access's Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment at 60, Prior Lawsuit D.E. 456 (Oct. 9, 2019). The Tribe also subsequently refused to permit Dakota Access to access Tribal land for response planning purposes. *See* Borkland Decl. attachment 15 (email from Doug Crow Ghost to Carl G. Borkland stating that "[Dakota Access] will need the Tribe's permission to enter the Reservation and to traverse Tribal land"). Then, in August 2020, the District Court again ordered the Tribes, the Corps, and Dakota Access to "discuss in good faith mitigation measures that could lessen the likelihood and severity of any oil leak in or around Lake Oahe." Prior Lawsuit D.E. 562 at 1; Prior Lawsuit D.E. 564 at 1. Both Dakota Access and the Corps separately and jointly attempted to consult with the Tribes. Prior Lawsuit D.E. 562 at 7-8; Prior Lawsuit D.E. 564 at 6. But, rather than engage in that good faith discussion as directed by the Court, the Tribe refused to discuss any "safety-enhancing mitigation measures" and on the Tribe's behalf, the Earth Justice legal representatives simply demanded that the pipeline be shut down and cease operating.

and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[5] Entitlement to intervention as of right

> depends on the following four factors: (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals*, 322 F.3d at 731 (internal quotation marks and citations omitted).

As explained in detail below, Dakota Access satisfies all four of these requirements.

---

[5] In the past, the D.C. Circuit has required "all would-be intervenors" to "demonstrate Article III standing." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232-33 (D.C. Cir. 2018). But the Supreme Court recently held that where a government party and supporting intervenor seek the same relief, a court "err[s] by inquiring" into an intervenor's "independent Article III standing." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Thus, Dakota Access need not show standing. *See Env't Integrity Project v. Wheeler*, No. 20-cv-1734, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Jackson, J.).

In any case, the D.C. Circuit has long held that "any person who satisfies [Federal Rule of Civil Procedure] 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *accord Biden v. U.S. Internal Revenue Serv.*, No. 23-cv-2711, 2024 WL 4332072, at *10 n.8 (D.D.C. Sept. 27, 2024); *Nat'l Wildlife Refuge Ass'n v. U.S. Army Corps of Eng'rs*, No. 22-cv-3498, 2023 WL 11743640, at *3 (D.D.C. Apr. 6, 2023); *Friends of Earth v. Haaland*, No. 21-cv-2317, 2022 WL 136763, at *2 (D.D.C. Jan. 15, 2022). Therefore, Dakota Access's satisfaction of Rule 24(a)'s requirements for intervention establishes its standing under Article III.

As the owner of DAPL, Dakota Access is "an object of the action . . . at issue," and its standing is therefore "self-evident." *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002) (citation omitted). With respect to injury-in-fact, this proceeding threatens Dakota Access with "concrete and particular[]" and "actual or imminent" injuries sufficient for Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see infra* at 7-8. With respect to causation and redressability, there can be "little question that the action" SRST seeks in this case (i.e., halting operation of DAPL) will "cause[] . . . injury" to Dakota Access, and that a "judgment preventing . . . the action will redress" that injury—or, more aptly, prevent it from occurring in the first place. *Sierra Club*, 292 F.3d at 900 (quoting *Lujan*, 504 U.S. at 561-62).

5

### A. This Motion is Timely.

"Whether a motion to intervene is timely made is to be determined from all the circumstances, including the purpose for which intervention is sought . . . and the improbability of prejudice to those already in the case." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (internal quotation marks omitted). Generally, a motion to intervene is found to be timely when, as here, it is brought at the early stages of the litigation. *See Fund for Animals*, 322 F.3d at 735 (motion timely when made "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6 (D.D.C. 2019) (Boasberg, J.) (intervention motion "certainly timely" when filed before existing defendant submitted its responsive pleading); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (motion timely when filed "less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive process had been made").

In this case, SRST filed its Complaint on October 14, 2024, and the federal Defendants have not yet filed an answer or otherwise responded to the Complaint. On December 4, 2024, this Court extended the existing Defendants' deadline to respond to the Complaint to January 17, 2025, which is approximately one month from the time this Motion is being filed. Dakota Access has acted promptly to intervene, and intervention at this early stage would not cause any prejudice to the existing parties. Dakota Access's motion to intervene is therefore timely.

On December 3, 2024, the Court granted the State of North Dakota's motion for leave to intervene and directed North Dakota to "file all pleadings by the same deadlines as Defendants." On December 17, 2024, this Court granted the motion for leave to intervene filed by the State of Iowa and twelve other States, "provided that they shall comply with all deadlines that apply to Defendants." If this Motion is granted, Dakota Access will likewise respond to SRST's Complaint on or before the deadlines for Defendants' responsive pleadings.

6

### B. Dakota Access Has Legally Protected Interests at Stake.

The second requirement for intervention of right is that the intervenor must demonstrate "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). To demonstrate a sufficient "interest" in the litigation, prospective intervenors must show a "direct and concrete interest that is accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986). Courts apply a "liberal approach" in evaluating a proposed intervenor's interest under Rule 24(a). *Southern Utah Wilderness v. Norton*, No. 01-cv-2518, 2002 WL 32617198, *5 (D.D.C. June 28, 2002). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

As the owner of DAPL, Dakota Access has a direct stake in this litigation and would be significantly harmed if the relief requested by Plaintiff were to be granted by this Court. "An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981); *see also Fund for Animals*, 322 F.3d at 735 (recognizing intervenor's interest in the property that was the subject of the action).

In addition, economic or financial interests are typically sufficient bases for intervention. *See Fund for Animals*, 322 F.3d at 733-35 (finding interest factors were met where intervenor would lose revenue if federal agency was unsuccessful in defending appeal); *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (recognizing prospective intervenor's "financial interest" in the litigation); *Navistar*, 840 F. Supp. at 361-62 (recognizing intervenor's interest as the manufacturer and seller of engines plaintiff sought to have government agency recall). Dakota Access has substantial, protectable interests in DAPL, including the billions of dollars it spent developing the project and the contractual commitments it has made to transport crude oil through the pipeline within certain timeframes. Given the extent of Dakota Access's protected interests in

7

DAPL, this Court previously allowed Dakota Access leave to intervene in the Prior Lawsuit. *See* Order, Prior Lawsuit D.E. 8 (Aug. 8, 2016).

### C. The Disposition of This Case Will Affect the Ability of Dakota Access to Protect its Interests.

In analyzing whether a prospective intervenor's ability to protect its interests in litigation may be impaired, courts must "look[] to the practical consequences of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977).

Plaintiff's suit threatens Dakota Access's interests. SRST seeks to prevent Dakota Access from continuing to operate DAPL. Compl. at p. 31 ¶ 3. If granted, such relief would, at minimum, impair Dakota Access's ability to recover its investments and perform its contractual obligations to transport oil for the benefit of producers, shippers, and purchasers. *See County of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (showing an "imminent threat of lost earnings" in actions challenging agency determination is sufficient to show a threat of impairment); *see also Fund for Animals*, 322 F.3d at 735 (finding impairment because the intervenor's "loss of revenues during any interim period would be substantial and likely irreparable"); *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010) (finding impairment where the "action may have the practical consequence of threatening [intervenor's] ability to remain competitive in the national coal market" (internal quotations omitted)).

### D. The Existing Defendants Do Not Adequately Represent Dakota Access's Interests.

The final element for intervention "requires that the [applicants] show that their interests are not adequately represented by the existing parties." *Foster*, 655 F.2d at 1325. "This burden is minimal and is met if appellants show that representation of their interests 'may' be inadequate." *Id.*; *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate;

8

and the burden of making that showing should be treated as minimal."). And a prospective intervenor's "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703.

It is well-settled that a government agency charged with serving the public interest cannot adequately represent the more narrow interests of private companies. *See Dimond*, 792 F.2d at 192-93 ("A government entity . . . is charged by law with representing the public interest of its citizens. . . . [It] would be shirking its duty were it to advance [a] narrower [private] interest at the expense of its representation of the general public interest."); *Fund for Animals*, 322 F.3d at 736, n.9 ("[G]overnmental entities do not adequately represent the interests of aspiring intervenors."); *Nat. Res. Def. Council*, 561 F.2d at 911-12 (similar); *see also Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) (similar); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748-49 (7th Cir. 2020) (holding that for purposes of intervention, private "companies [owning energy infrastructure] cannot be forced to rely entirely on their regulators to protect their investment," and collecting cases (emphasis omitted)). For these reasons, courts in this Circuit "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015).

Here, the federal Defendants cannot adequately represent Dakota Access because they will necessarily pursue a broader set of interests than Dakota Access's specific interests in operating DAPL. Defendants administer permitting programs on behalf of the public at large and must make certain public interest determinations. In contrast, Dakota Access's private interests are focused on Dakota Access's specific business interests in operating DAPL pursuant to applicable law. Furthermore, the federal Defendants would suffer minimal economic harm from an adverse

9

decision, while the harm to Dakota Access from an adverse decision would be potentially enormous.

Nor can the existing State Intervenor-Defendants adequately represent Dakota Access's interests. Charging any governmental entity with "protect[ing] not only the interest of the public but also the private interest of" a company is "on its face impossible." *Nat'l Farm Lines*, 564 F.2d at 384. North Dakota's claimed interests in this case include its "sovereign interests to regulate land use and resource development" and its "sovereign interest in governing the land within its borders." D.E. 10-1 at 14-15. Similarly, Iowa and the remaining State Intervenor-Defendants claim "sovereign interests in protecting [their] citizens." D.E. 19 at 15. Those public interests, while important, are materially different than Dakota Access's private interests in this litigation (e.g., advancing its business objectives, serving the best interests of its owners and their shareholders, and meeting contractual obligations to customers). Because Dakota Access would directly incur significant costs if the Court were to grant SRST's requested relief, Dakota Access has different interests than both the federal Defendants and the State Intervenor-Defendants, and may have a divergent litigation strategy from those entities. *See Fund for Animals*, 322 F.3d at 735-38 (neither the federal government nor an existing group of intervenors adequately represented the interests of a Mongolian government ministry that sought to intervene; "minimal" burden to intervene satisfied because, despite "some overlap" or "partial congruence" in interests, the proposed intervenor's interests "might diverge" from the existing parties' interests "during the course of litigation"); *Johnson v. S.F. Unified Sch. Dist.*, 500 F.2d 349, 354 (9th Cir. 1974) (in school desegregation case, finding that the "distinct viewpoint" and interests of one group of parents who wished to intervene were not adequately represented by either the defendant school district or an existing group of other parents who had already intervened).

Finally, Dakota Access's participation will be helpful to the Court. Among other things, Dakota Access is in a better position than both the Corps and the State Intervenor-Defendants to discuss the harm to DAPL, and to Dakota Access, that would arise from granting the relief requested by SRST. That said, Dakota Access will endeavor to coordinate with all existing Defendants and Defendant-Intervenors to avoid duplicative briefing and to ensure that its participation will be of assistance to the Court.

## II. Alternatively, Dakota Access Should Be Granted Permissive Intervention Under Rule 24(b)(1)(B).

Alternatively, Dakota Access seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), which allows this Court to permit intervention if a movant has "a claim or defense that shares with the main action a common question of law or fact." "[P]ermissive intervention is an inherently discretionary enterprise." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.C. Cir. 2010) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). Rule 24 is construed "liberally" in favor of potential intervenors. *In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34088808, *3 (D.D.C. 2001).

Dakota Access's defense in this action will share common questions of law and fact with Defendants'. Here, as explained above, Dakota Access has a direct and substantial interest in defending against Plaintiff's legal claims. Were the relief requested by SRST granted, Dakota Access would suffer significant financial harm. In light of Rule 24(b)'s low threshold, these potential harms to Dakota Access's interests establish grounds for intervention.

Thus, permissive intervention also is warranted.

11

## **CONCLUSION**

For the foregoing reasons, Dakota Access asks this Court to grant its Motion.

Dated:  December 18, 2024                         Respectfully submitted,

*/s/ William S. Scherman*

William S. Scherman (D.C. Bar No. 384860)
Ronald J. Tenpas (D.C. Bar No. 981074)
Jason J. Fleischer (D.C. Bar No. 978810)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6588
Facsimile: (202) 639-6604
Email: wscherman@velaw.com
Email: rtenpas@velaw.com
Email: jfleischer@velaw.com

*Counsel for Dakota Access, LLC*

**CERTIFICATE OF COMPLIANCE**

The foregoing document complies with the page limitation set forth in Local Civil Rule 7(e) because it contains fewer than 45 pages.

Dated: December 18, 2024             Respectfully submitted,

/s/ William S. Scherman

William S. Scherman (D.C. Bar No. 384860)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6588
Facsimile: (202) 639-6604
Email: wscherman@velaw.com

*Counsel for Dakota Access, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 18th day of December 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

Dated: December 18, 2024                    Respectfully submitted,

                                            */s/ William S. Scherman*
                                            William S. Scherman (D.C. Bar No. 384860)
                                            VINSON & ELKINS LLP
                                            2200 Pennsylvania Avenue NW
                                            Suite 500 West
                                            Washington, D.C. 20037
                                            Telephone: (202) 639-6588
                                            Facsimile: (202) 639-6604
                                            Email: wscherman@velaw.com

                                            *Counsel for Dakota Access, LLC*