## UNITED STATES DISTRICT COURT
## DISTRICT OF WASHINGTON, D.C.

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>      Plaintiff,<br><br>v.<br><br>U.S. ARMY CORPS ENGINEERS;<br>MICHAEL CONNOR, in his capacity as Assistant Secretary;<br>COL. ROBERT J. NEWBAUER, in his Capacity as Omaha District Commander;  and<br>BRIG. GEN. GEOFF VAN EPPS, in his capacity as Northwestern Division Commander,<br><br>      Defendants,<br>and<br><br>STATE OF NORTH DAKOTA, et al.,<br><br>      Intervenor-Defendants. | Case No. 1:24-cv-02905 |

**INTERVENOR-DEFENDANT STATES' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION AND SUMMARY OF REPLY ................................................................... 1

I. Plaintiff Fails to Identify Any Mandatory Actions That Could Support a Claim Under Section 706(1) of the Administrative Procedure Act. ............................................... 3

    A. Plaintiff Fails to Identify Mandatory Actions Under the Mineral Leasing Act. ................................................................................................................... 3

    B. Plaintiff Fails to Identify Mandatory Actions Under the Clean Water Act. ............ 5

    C. Plaintiff Fails to Identify a Mandatory Duty Under the Corps' Regulations. .......... 6

    D. Plaintiff Fails to Identify Mandatory Actions Under the Government Acquisition and Streamlining Act of 1994 or the National Historic Preservation Act. ................................................................................................ 7

II. Plaintiff Fails to Provide a Basis for Its Second and Third Claims for Relief Having Disclaimed Bringing Any Claims Under Section 706(2). ..................................... 9

III. The Complaint Should Be Dismissed with Prejudice. ....................................................... 10

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                               **Page(s)**

*Allen v. McCurry*,
   449 U.S. 90 (1980) ........................................................................................................................ 9

*Bussman v. Uber Technologies, Inc.*,
   2025 WL 49905 (D.D.C. Jan. 08, 2025) ................................................................................ 6, 10

*Center for Biological Diversity v. Zinke*,
   260 F.Supp.3d 11 (D.C. Cir. 2017) ............................................................................................. 3

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Retirement Sys.*,
   594 U.S. 113 (2021) .................................................................................................................... 4

*Hammond v. Norton*,
   370 F.Supp.2d 226 (D.D.C. 2005) .............................................................................................. 4

*Kowal v. MCI Comms. Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) .................................................................................................... 6

*NTCH, Inc. v. FCC*,
   841 F.3d 497 (D.C. Cir. 2016) .................................................................................................... 7

*Page v. United States*,
   729 F.2d 818 (D.C. Cir. 1984) .................................................................................................... 9

*Standing Rock Sioux Tribe, et al. v. U.S. Army Corps of Engineers, et al.*
   (*"Standing Rock X"*),
   540 F.Supp.3d 45 (D.D.C. 2021) ........................................................................................ 1, 2, 7

*Stephenson v. Cox*,
   223 F.Supp.2d 119 (D.D.C. 2002) ......................................................................................... 9, 10

*Wannall v. Honeywell, Inc.*,
   775 F.3d 425 (D.C. Cir. 2014) .................................................................................................... 6

*Wilderness Soc. v. Morton*
   479 F.2d 842 (D.C. Cir. 1973) .................................................................................................... 5

**Statutes**

5 U.S.C. § 706 ........................................................................................................... 1, 3, 4, 5, 9, 10

30 U.S.C. § 185 ...................................................................................................................... 4, 5, 6

33 U.S.C. § 1321 ............................................................................................................................ 5

**Other Authorities**

36 C.F.R. § 327.20 ..................................................................................................................... 6, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 10

## INTRODUCTION AND SUMMARY OF REPLY

Plaintiff's response brief, ECF No. 46 (MTD Resp.), offers some clarity as to what relief Plaintiff is **not** seeking by bringing this lawsuit:

- It is not an action for judicial review of a final agency action under 5 U.S.C. § 706(2). *Id.* at 1.

- "It is not an action challenging NEPA adequacy," or seeking an order that the Corps complete its NEPA review by any specific date. *See id.*

- It does not seek to require that the Corps enforce trespass regulations. *Id.* at 2.

- It does not seek to have the pipeline removed. *Id.* at 2, 9.

- And it now ostensibly does not seek to "shut down the pipeline during the pendency of an EIS." *Id.* at 9; *but see* ECF No. 3-1 (Compl.) at 31 (requesting "an immediate and permanent injunction prohibiting defendants … from allowing or authorizing … the operation of the Dakota Access Pipeline … or a writ of mandamus to compel defendants to require the shut down of the Dakota Access Pipeline").

What remains is Plaintiff's assertion that it is merely seeking an order "compelling Federal Defendants to require the pipeline operator to meet its legal requirements for pipeline operation, including the requisite easement and lawful facility response plan." MTD Resp. at 2. Phrased differently, "Plaintiff asks the Court for relief from the operation of a hazardous liquid pipeline across a flood control project without an easement." *Id.* at 9.

Plaintiff is vague as to what, precisely, that means. If all Plaintiff is seeking is a declaratory judgment that DAPL's continued operation without an approved easement is an unlawful encroachment on federal land, this Court has already held that, *Standing Rock X*, 540 F.Supp.3d 45, 49-50 (D.D.C. 2021), and no parties are disputing the point, *e.g.*, ECF 33-1 (States MTD) at 9.

1

But it seems apparent that is not what Plaintiff is asking for. Despite Plaintiff's attempt to run away from the relief that was requested in its own Complaint, "relief from the operation" of DAPL looks simply like a different way to ask that DAPL be shut down. Yet this Court has already denied Plaintiff's request for an injunction that would halt pipeline operations, noting that the Corps' "active[] tolerat[ion]" of "DAPL's continued operation ... is a political decision outside this Court's area of inquiry." *Standing Rock X*, 540 F.Supp.3d at 65.

To explain its vague request that the Court provide "relief from the operation" of DAPL, Plaintiff goes on at length about the necessity for an easement for the challenged DAPL river crossing, and various conditions that may attach to such an easement. However, any such easement cannot be granted until *after* the Corps has completed the Court-ordered NEPA review, a process which Plaintiff disclaims challenging with this lawsuit. MTD Resp. at 1.

And therein lies the problem—the Corps remains actively engaged in that Court-ordered NEPA review process, which will result in the Corps either granting or denying the easement application, and ensuring that any easement (if granted) contains sufficient stipulations to protect public health and the environment. That process may be taking longer than Plaintiff (or the States) would wish, but Plaintiff is not alleging that the time and effort being expended by the Corps to complete that extensive review process are in bad faith or constitute some form of pretext.

As the States (as well as the Federal Defendants and Dakota Access) previously addressed in detail, how the Corps chooses to deal with the pipeline's continued operation during the pendency of that NEPA re-assessment is an issue that has been left to the Corps' discretion. And none of the authorities cited by Plaintiff speak to the situation presented here: where a nationally important pipeline *was* granted an easement, the pipeline operated for years without incident, but then the easement was invalidated pending a more thorough NEPA assessment.

2

Plaintiff has failed to identify <u>any</u> discrete agency action that the Corps is legally <u>required</u> to take regarding DAPL's continued operation while that NEPA re-assessment and easement decision are still pending. As such, it has no basis for a lawsuit to "compel agency action" under 5 U.S.C. § 706(1), and the Complaint must be dismissed for failure to state a claim. *Center for Biological Diversity v. Zinke*, 260 F.Supp.3d 11, 20 (D.C. Cir. 2017) (Jackson, J.).

I. **Plaintiff Fails to Identify Any Mandatory Actions That Could Support a Claim Under Section 706(1) of the Administrative Procedure Act.**

At base, Plaintiff's argument appears to be that because the Corps must comply with certain provisions of various statutes *before* granting an easement, and because DAPL is currently operating without an easement, the Corps has violated mandatory duties. But *none* of the authorities Plaintiff invokes speak to the situation presented here. Moreover, by their own terms, none of the invoked authorities impose mandatory obligations on the Corps *until* the Corps makes a decision on whether or not to grant the pending easement. Plaintiff's arguments therefore all fail because the Corps has undeniably *not* yet made a final decision on the easement application—and indeed it cannot do so until it has completed the court-ordered NEPA review process.

A. **Plaintiff Fails to Identify Mandatory Actions Under the Mineral Leasing Act.**

Plaintiff claims that the Corps has violated the MLA by failing to act "in **permitting the ongoing operation of DAPL without subjecting**… such operations **to the mandatory requirements of the Mineral Leasing Act** constitutes **agency action** that has been **unlawfully withheld**." MTD Resp. at 3 (emphasis in original) (citing Compl. ¶105). But there is of course a glaring problem with this claim: the Corps has not yet actually "permitted" anything at this time. Instead, it is actively continuing to evaluate the pending easement application, and there is a difference between actively permitting an encroachment and temporarily declining to take an enforcement action to terminate a known encroachment.

3

To reach its conclusion that the Corps has withheld a discrete, mandatory action under the MLA, Plaintiff first argues that the MLA "*requires* [the pipeline operator] to obtain a right-of-way from the [federal agency] before it can construct, *operate or maintain* a pipeline on federal lands." MTD Resp. at 5 (emphasis and brackets in original) (quoting *Hammond v. Norton*, 370 F.Supp.2d 226, 233 (D.D.C. 2005). However, Plaintiff is citing a court's general summation of the MLA in a case addressing different issues. *Cf. Goldman Sachs Grp., Inc. v. Arkansas Teacher Retirement Sys.*, 594 U.S. 113, 135 (2021) (Gorsuch, J., concurring in part) ("it is a mistake to parse terms in a judicial opinion with the kind of punctilious exactitude due statutory language").

Second, Plaintiff argues that several "shall" provisions in Section 185 of the MLA create mandatory obligations that the Corps has unreasonably withheld here. MTD Resp. at 6-7. However, the provisions cited by Plaintiff relate to mandatory duties the Corps must comply with *when granting* a right-of-way. For example, Section 185(c) requires agencies to "administer and enforce the provisions of this section, appropriate regulations, and the *terms and conditions of rights-of-way or permits*…" 30 U.S.C. § 185(c) (emphasis added). There are not any "terms and conditions" on the easement for the Corps to enforce if and until the Corps actually decides to grant the easement. Similarly, the other various uses of "shall" scattered throughout 30 U.S.C. § 185 relate to conditions required *if* the Corps grants an easement, and thus cannot be the basis for any actions under APA Section 706(1) *until* such easement has been granted (and then is alleged not to have been complied with). *See, e.g.,* 30 U.S.C. § 185(d) ("The width of a right-of-way shall not exceed fifty feet …); § 185(e) ("Rights-of-way or permits *granted or renewed* …); § 185(f) ("Rights-of-way or permits *granted or renewed* pursuant to this section shall …); § 185(h) ("[t]he Secretary or agency head, *prior to granting a right-of-way or permit pursuant to this section* … shall require …)." Indeed, some of the uses of "shall" that Plaintiff lifts from Section 185 don't

4

appear to relate to its claims in this case at all. *See, e.g.*, 30 U.S.C. § 185(p) ("the utilization of rights-of-way in common shall be required to the extent practical") (cited at MTD Resp. at 7).

Third, to the extent Plaintiff relies upon *Wilderness Soc. v. Morton* (*see* MTD Resp. at 5, 8), that case only stood for the proposition that a *when* an agency grants a right-of-way, it cannot violate certain requirements. 479 F.2d 842, 848 (D.C. Cir. 1973) (en banc). *Morton* says nothing about mandatory actions that an agency must take *prior* to acting on a pending right of way application, let alone what an agency must do when presented with a fact pattern like presented here, where an easement *was* issued but then vacated pending a NEPA re-assessment.

Finally, Plaintiff misconstrues the arguments regarding the Corps' permissive authority to grant a right-of-way under Section 185(a) of the MLA, claiming those arguments imply that the Corps could indefinitely withhold action on a right-of-way application and thereby circumvent the requirements of the MLA. MTD Resp. at 8. Not so. Intervenor States (and other Defendants) referenced Section 185(a) for the undeniable proposition that the Corps has discretionary authority to grant, *or deny*, the pending easement application. And until the Corps acts on that pending application, Plaintiff has not identified any mandatory duties under 30 U.S.C. § 185 that would be actionable under Section 706(1) of the APA.

   **B.**  **Plaintiff Fails to Identify Mandatory Actions Under the Clean Water Act.**

Plaintiff also fails to identify any discrete, mandatory duties under the CWA that the Corps is currently violating. Plaintiff's entire CWA claim is based on the premise that the Corps has somehow withheld action on the required Facility Response Plan ("FRP") under 33 U.S.C. § 1321(j)(5)(A)(i) of the CWA. *See* MTD Resp. at 10-11. But Plaintiff still does not identify any action that the Corps is legally required to take at this time regarding the FRP.

Plaintiff attempts to rehabilitate its CWA claim by arguing that claim looks back to the MLA provisions discussed *supra*, and specifically the provision discussing compliance with

5

certain NEPA requirements "*prior to* granting a right-of-way or permit." 30 U.S.C. § 185(h)(2). *See* MTD Response at 10. Plaintiff cites to no authority linking 30 U.S.C. § 185(h)(2) to the CWA's FRP requirements. But regardless, even if the Court takes this argument at face value, Plaintiff's claim fails for the reasons discussed *supra*—*i.e.*, the requirements of 30 U.S.C. § 185(h) only apply to *decisions* on an easement application and the conditions imposed in a granted easement; they do not impose duties on the Corps prior to an easement decision having been made.

Second, even assuming that through some transitive property the CWA imposed mandatory duties that the Corps must now take through the medium of 30 U.S.C. § 185(h)(2), Plaintiff's allegation is that the FRP is legally deficient "upon information and belief." Compl. ¶124. Plaintiff does not plead, with any specificity, what about the FRP is legally deficient, or what the Corps would be required to do to ensure compliance. *Cf. Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1279 (D.C. Cir. 1994) ("pleadings on information and belief did not aver that facts ... were particularly within the defendants' knowledge, or identify the facts upon which their belief … was founded. As such, dismissing the complaint under … 12(b)(6) was proper."). Intervenor States made this point in their motion to dismiss (*see* States MTD at 21), but Plaintiff did not provide any argument in response. *Cf. Bussman v. Uber Technologies, Inc.*, 2025 WL 49905, *5 (D.D.C. Jan. 08, 2025) (Boasberg, C.J.) ("by neglecting to respond to … these arguments, [party] apparently concedes them") (citing *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)).

### C. Plaintiff Fails to Identify Mandatory Under the Corps' Regulations.

The sole regulation that Plaintiff identifies as allegedly imposing a legal requirement for the Corps to take some sort of action with regard to DAPL's continued operation is 36 C.F.R. § 327.20, which states that structures are prohibited on or under Corps-managed land "without appropriate written authorization." MTD Resp. at 11. But on its face, this language imposes no mandatory obligation on the Corps—it merely states that unauthorized structures lacking written

6

authorization are prohibited. It says nothing whatsoever about what the Corps *should* do, let alone what it *must* do, in a circumstance like that which is presented here.

As Intervenor States already addressed, this provision provides that while unauthorized structures "are <u>subject to</u> ... removal," they do not <u>require</u> removal. States MTD at 16 (citing 36 C.F.R. § 327.20 (emphasis added)); *see also NTCH, Inc. v. FCC*, 841 F.3d 497, 503 (D.C. Cir. 2016) ("Merely because the statute indicates situations with respect to which the agency may take enforcement actions does not mean that the agency must act in all such situations.").

Further, Plaintiff's demand that unauthorized "structures" be removed would seem to be a request to have the pipeline removed—relief which Plaintiff disclaims seeking only a few pages earlier. *Compare* MTD Resp. at 11-12 *with* MTD Resp. at 9 ("Plaintiff … does not ask the Court to order removal of the pipe."). And in any event, even overlooking Plaintiff's inability to be consistent on the remedies that it is seeking even within the same brief, Plaintiff ignores that this Court has already denied Plaintiff's attempt to expand the order vacating the easement to also include vacating the Section 408 Permit, which authorized Dakota Access "to lay the pipeline underneath Lake Oahe." *See Standing Rock X*, 540 F.Supp.3d at 65.

Plaintiff attempts to circumvent the lack of a mandatory duty in the Corps' regulations to take action against an unauthorized structure by alleging that the Corps, in its past dealings with Plaintiff, has required "strict compliance with its land management regulations." MTD Resp. at 12 (citing Alkire Decl., ECF No. 46-2 at ¶7). But even if this were taken to be true, how the Corps has chosen to exercise its discretionary enforcement authority in the past has no bearing on whether that authority imposes mandatory obligations in this instance.

>    **D.    Plaintiff Fails to Identify Mandatory Actions Under the Government Acquisition and Streamlining Act of 1994 or the National Historic Preservation Act.**

Next, Plaintiff claims under the Government Acquisition and Streamlining Act of 1994

7

that "mandatory federal law requirements, binding on defendants and Energy Transfer LP, require a lawful easement in place in order to lawfully operate DAPL." MTD Resp. at 12 (citing Compl. ¶115). Plaintiff claims that Energy Transfer LP is "ineligible for an easement for the indefinite future" and implies that the Corps' failure to outright deny the easement application thus constitutes action unlawfully withheld and unreasonably delayed. *Id.* at 13. Plaintiff identifies no provision of the Government Acquisition and Streamlining Act of 1994 that would require the Corps to immediately deny the pending easement application based on potential ineligibility.

Again, the Corps has *not yet* taken final action on the pending easement application. Indeed, if the Corps ultimately decides to deny the easement application, this allegation will never become ripe. In short, until the Corps acts on the pending easement application, it cannot have (allegedly) violated the Government Acquisition and Streamlining Act of 1994.

Plaintiff's National Historic Preservation Act ("NHPA") argument has the same defect. Plaintiff argues the past alleged destruction of cultural artifacts "renders Energy Transfer LP ineligible for the requested [MLA] easement" which is "currently under consideration" by the Corps. MTD Resp. at 13. But Plaintiff cites to no authority mandating the Corps must immediately deny the pending easement application based on these allegations. As such, until the Corps acts on the pending easement application, it cannot have (allegedly) violated NHPA Section 110(k).

Further, Plaintiff does not substantively address Intervenor States' argument that its NHPA claims are barred by *res judicata* (*see* States MTD at 22-23). At best, Plaintiff appears to obliquely respond by summarily claiming, without citation to any authority, that this Court's order for the Corps to prepare an environmental impact statement "re-opened all relevant issues, including impacts to cultural resources." MTD Resp. at 17. Yet, as Intervenor States have already explained, *res judicata* applies not only to claims that were actually litigated in the first case, but also to those

8

claims that "could have been raised in that [prior] action" but were not. States MTD at 23 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). Having failed to meaningfully address the *res judicata* argument, Plaintiff should be presumed to have conceded that issue. *Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.").

Finally, Plaintiff also argues that its claims sounding in the Government Acquisition and Streamlining Act of 1994 and NHPA Section 110(k) "tier[] directly off the allegations made with respect to the Corps' mandatory requirements under the" MLA and the CWA. MTD Resp. at 12-13. But as noted *supra*, Plaintiff has failed to identify any provisions of the MLA or CWA that legally require the Corps to take any specific action with regard to DAPL's present operation.

## II. Plaintiff Fails to Provide a Basis for Its Second and Third Claims for Relief Having Disclaimed Bringing Any Claims Under Section 706(2).

Plaintiff now disclaims that it is seeking relief under APA Section 706(2), which allows a reviewing Court to "hold unlawful and set aside agency action" found to be arbitrary and capricious or otherwise not in accordance with law. *See* MTD Resp. at 1. That concession renders at least two of the claims for relief in Plaintiff's Complaint inoperative.

Plaintiff's second claim for relief seeks to "Set Aside and Vacate" the decisions of the Corps that "allow/authorize" Dakota Access "to continue to operate" DAPL. Compl. at 31. However, by Plaintiff's concession, it is not alleging in this lawsuit that there has been any final agency action capable of being set aside and vacated. MTD Resp. at 1.

Similarly, Plaintiff's third claim for relief seeks an immediate and permanent injunction prohibiting Defendants from "allowing or authorizing" DAPL's operation and a writ of mandamus compelling Defendants to "shut down" DAPL "pending full compliance with the requirements of

9

federal law." Compl. at 31. But this is the antithesis of a "failure to act" claim under APA Section 706(1), instead requesting that this Court prohibit the Corps from finalizing decisions concerning the very actions that Plaintiff claims the Corps has unreasonably withheld.

### III. The Complaint Should Be Dismissed with Prejudice.

Plaintiff does not address the parties' arguments that if this Court grants the motions to dismiss, it should do so with prejudice. Plaintiff has thus conceded that argument as well. *Stephenson,* 223 F.Supp.2d at 121; *Bussman*, 2025 WL 49905 at *5.

Dismissal with prejudice does not leave Plaintiff without future recourse. Once the Corps takes final agency action and issues final decisions on the pending environmental impact statement and easement application, Plaintiff will be able to file a lawsuit challenging those decisions then, if it so wishes. Until that time, allowing Plaintiff to amend its Complaint would only waste judicial resources and divert further Corps resources away from completing the Court-ordered review process and reaching a decision on the pending easement application.

### CONCLUSION

For the reasons stated herein, Plaintiff's Complaint should be dismissed in its entirety with prejudice under Rule 12(b)(6) for failure to state a claim.

Date: February 24, 2025.

                                     DREW H. WRIGLEY
                                     Attorney General of North Dakota

                                     /s/ *Philip Axt*
                                     PHILIP AXT
                                     Solicitor General
                                     MATTHEW SAGSVEEN
                                     Director of Natural Resources & Native American Affairs
                                     600 E. Boulevard Ave., Dept. 125
                                     Bismarck ND 58505
                                     Phone: (701) 328-2210
                                     Email: pjaxt@nd.gov
                                     Email: masagsve@nd.gov

PAUL M. SEBY
Special Assistant Attorney General
1144 15th St, Suite 3300
Denver, CO 80202
Phone: (303) 572-6584
Email: sebyp@gtlaw.com

*Counsel for State of North Dakota*

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for State of Iowa*

CHRISTOPHER M. CARR
Attorney General of Georgia

*/s/ Stephen J. Petrany*
STEPHEN J. PETRANY
Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*

THEODORE E. ROKITA
Attorney General of Indiana

*/s/ James A. Barta*
JAMES A. BARTA
Solicitor General
Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for State of Indiana*

RUSSELL COLEMAN
Attorney General of Kentucky

*/s/ Victor B. Maddox*
VICTOR B. MADDOX
JASON P. WOODALL
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Victor.Maddox@ky.gov
Jason.Woodall@ky.gov

*Counsel for the Commonwealth of Kentucky*

11

LIZ MURRILL
Attorney General of Louisiana

/s/ J. Benjamin Aguiñaga
J. BENJAMIN AGUIÑAGA
Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for State of Louisiana*

AUSTIN KNUDSEN
Attorney General of Montana

/s/ Christian B. Corrigan
CHRISTIAN B. CORRIGAN
Solicitor General
PETER M. TORSTENSEN, JR.
Deputy Solicitor General
Montana Department of Justice
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Counsel for State of Montana*

GENTNER DRUMMOND
Attorney General of Oklahoma

/s/ Garry M. Gaskins, II
GARRY M. GASKINS, II
Solicitor General
Office of the Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for State of Oklahoma*

ANDREW T. BAILEY
Attorney General of Missouri

/s/ Victoria S. Lowell
VICTORIA S. LOWELL, 76461
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, Missouri 63101
Tel: (314) 340-4792
Email: Victoria.lowell@ago.mo.gov

*Counsel for State of Missouri*

MICHAEL T. HILGERS
Attorney General of Nebraska

/s/ Grant D. Strobl
GRANT D. STROBL
Assistant Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2683
grant.strobl@nebraska.gov

*Counsel for State of Nebraska*

ALAN WILSON
Attorney General of South Carolina

/s/ Thomas T. Hydrick
THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211
803-734-4127
thomashydrick@scag.gov

*Counsel State of South Carolina*

12

| | |
|---|---|
| MARTY J. JACKLEY<br>Attorney General of South Dakota<br><br>*/s/ Jennifer L. Verleger*<br>JENNIFER L. VERLEGER<br>Assistant Attorney General<br>1302 East Highway 14, Suite 1<br>Pierre, South Dakota 57501<br>(605) 773-2243<br>jennifer.verleger@state.sd.us<br><br>*Counsel for State of South Dakota*<br><br><br>J.B. MCCUSKY<br>Attorney General of West Virginia<br><br>*/s/ Michael R. Wiliams*<br>MICHAEL R. WILLIAMS<br>Office of the West Virginia Attorney General<br>State Capitol Complex<br>Building 1, Room E-26<br>Charleston, WV 25301<br>(681) 313-4511<br>michael.r.williams@wvago.gov<br><br>*Counsel for State of West Virginia* | KEN PAXTON<br>Attorney General of Texas<br>BRENT WEBSTER<br>First Assistant Attorney General<br>RALPH MOLINA<br>Deputy First Assistant Attorney General<br>AUSTIN KINGHORN<br>Deputy Attorney General for Legal Strategy<br>RYAN D. WALTERS<br>Chief, Special Litigation Division<br><br>*/s/ Ryan G. Kercher*<br>RYAN G. KERCHER<br>Deputy Chief, Special Litigation Division<br>ZACHARY W. BERG<br>Special Counsel<br>Office of the Attorney General of Texas<br>Special Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Ryan.kercher@oag.texas.gov<br>Zachary.berg@oag.texas.gov<br><br>*Counsel for State of Texas* |

13

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the page limitation set forth in Local Civil Rule 7(e) because it contains fewer than 25 pages.

Dated: February 24, 2025                         */s/ Philip Axt*
                                                 Solicitor General of North Dakota

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 24th day of February 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

Dated:  February 24, 2025         */s/ Philip Axt*
                                  Solicitor General of North Dakota